ORDERED.

**Dated:  June 05, 2024**

_____
Caryl E. Delano
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                                                    Case No. 8:23-bk-00448-CED
                                                                               Chapter 7

Tampa Hyde Park Café Properties, LLC,

    Debtor.

_____/

### ORDER DENYING DEBTOR'S MOTION FOR SUMMARY JUDGMENT ON SECOND AMENDED OBJECTION TO CLAIM NO. 8-1 (Doc. No. 363)

The Internal Revenue Service ("IRS") filed an unsecured claim in this Chapter 7 case for unpaid taxes owed by Debtor's alleged alter ego, Tampa Hyde Park Café, LLC ("Hyde Park Café").

Debtor objected to the claim and moved for summary judgment on two grounds:  (1) that the Internal Revenue Code does not authorize the IRS to pursue an unsecured claim based on an alter ego theory; and (2) even if the Internal Revenue Code provides such authorization, the Chapter 7 Trustee released any alter ego claim the IRS may have had against Debtor in a court-approved settlement agreement.

Having carefully considered the parties' arguments, the Court concludes that the Internal Revenue Code confers upon the IRS broad powers to collect taxes, including the right to initiate civil actions against non-taxpayers to collect taxes owed by a non-taxpayer's alter ego; and, because the IRS's alter ego claim alleges an injury to the IRS—not an injury to Debtor—the claim is not property of the estate and could not have been released by the Chapter 7 Trustee. Therefore, the Court will deny Debtor's summary judgment motion.

## I.    BACKGROUND

The facts are not in dispute.

Debtor and Hyde Park Café are Florida limited liability companies whose membership interests are owned by the same individuals. In 2002, Debtor purchased real property in Tampa, Florida (the "Property") that Debtor leased to Hyde Park Café. Hyde Park Café operated a nightclub on the Property, using a liquor license owned by Debtor.

Between 2010 and 2020, the IRS assessed more than $3 million in unpaid employment taxes against Hyde Park Café and recorded Notices of Federal Tax Lien against it.[1]

---

[1] The IRS did not file a Notice of Federal Tax Lien against Debtor, nor did it take any action prior to this bankruptcy case to collect the taxes from Debtor.

In February 2023, Debtor filed a voluntary Chapter 11 bankruptcy petition.[2] On June 27, 2023, the Court converted the case to a Chapter 7 case.[3] Angela Welch was appointed as the Chapter 7 Trustee (the "Trustee").[4]

Thereafter, the Trustee entered into a global settlement agreement (the "Settlement Agreement")[5] involving Debtor, Hyde Park Café, and two additional related entities:  a similarly named entity, Hyde Park Café, LLC ("HPC"),[6] and CPT Acquisitions, LLC. The Settlement Agreement provided for (a) the resolution of disputes between the Trustee and the parties; (b) the Trustee to sell Debtor's assets to HPC (the "Sale of Assets"); and (c) the parties to the Settlement Agreement to execute mutual releases.

After notice to creditors and a hearing, the Court approved the Settlement Agreement and the Sale of Assets (the "Compromise Order.").[7] The Trustee's Sale of Assets to HPC closed on December 20, 2023.[8]

---

[2] Doc. No. 1.

[3] Doc. No. 170.

[4] Doc. No. 175.

[5] Doc. No. 297.

[6] Tampa Hyde Park Café, LLC (referred to herein as Hyde Park Café), Hyde Park Café, LLC, and the Debtor in this case, Tampa Hyde Park Café Properties, LLC, were formed as three separate entities.

[7] Doc. Nos. 337 and 338.

[8] Doc. No. 379-1.

In the meantime, before the Sale of Assets closed, the IRS filed a $1.7 million claim in Debtor's bankruptcy case for unpaid taxes. The proof of claim stated that the claim was secured by a lien on "[a]ll of debtor(s) right, title and interest to property – 26 U.S.C. § 6321."[9] The IRS attached exhibits to the proof of claim that reflected that the tax debt was owed by Hyde Park Café.[10]

Debtor, believing that the IRS based its claim on the theory that Debtor held assets belonging to Hyde Park Café as Hyde Park Café's "nominee," objected to the IRS's proof of claim (the "Objection").[11] Debtor primarily argued (a) that the "nominee" theory fails because there is no evidence that Debtor held property belonging to Hyde Park Café; and (b) that the IRS's claim was not secured by any of Debtor's assets.[12]

In its response to the Objection, the IRS asserted that it seeks to impose Hyde Park Café's tax liability against Debtor, not on a "nominee theory," but on the theory that Debtor is Hyde Park Café's alter ego.[13]

---

[9] Claim No. 8-1, p. 2.

[10] *Id.* at pp. 7-21.

[11] Doc. No. 314.

[12] *Id.* at pp. 4-7.

[13] Doc. No. 340 at p. 3 ("The IRS Claim should be allowed because it imposes [Hyde Park Café's] tax liabilities [on Hyde Park Café's] alter ego, the Debtor.").

Because the existence of the IRS's lien as asserted in its proof of claim was in bona fide dispute, the Court, under Bankruptcy Code § 363(f),[14] authorized the Sale of Assets free and clear of the IRS's lien, with the lien—if any—attaching to the sales proceeds.[15]

In Debtor's *Motion for Summary Judgment on Second Amended Objection to Claim No. 8-1* (the "Summary Judgment Motion"),[16] Debtor initially contended that the IRS's claim was not secured because the IRS failed to record Notices of Federal Tax Lien against Debtor and that all alter ego claims—including the IRS's alleged alter ego claim—are property of Debtor's bankruptcy estate that were released under the Settlement Agreement and Compromise Order.

After Debtor filed the Summary Judgment Motion, the IRS amended its claim to assert a $1.7 million unsecured claim.[17] Of that amount, the IRS claims $731,109.77 as a priority unsecured claim and $959,811.37 as a general unsecured claim.[18] In its response to the Summary Judgment Motion, the IRS acknowledges that its claim

---

[14] 11 U.S.C. § 363(f).

[15] Doc. No. 337, ¶¶ 6, 7.

[16] Doc. No. 363.

[17] Claim No. 8-2.

[18] *Id.*

against Debtor is based solely on the theory that Hyde Park Café is Debtor's alter ego.[19]

In its *Reply in Support of Motion for Summary Judgment*, Debtor argued that the Internal Revenue Code does not authorize the IRS to pursue a claim for money damages against a non-taxpayer based on an alter ego theory.[20] In other words, Debtor argues that the Internal Revenue Code authorizes the IRS to proceed against a non-taxpayer only to recover the assets of a taxpayer that are in the hands of the non-taxpayer.

If the IRS's claim is allowed, the Trustee's distribution to unsecured creditors will include a significant distribution to the IRS; if the claim is disallowed, the case will be a "surplus asset case," and funds will be refunded to Debtor.

## II.   ANALYSIS

The issues before the Court on Debtor's Summary Judgment Motion are (a) whether the Internal Revenue Code authorizes the IRS to pursue an alter ego claim against Debtor; and (b) whether the IRS's alleged alter ego claim is property of Debtor's bankruptcy estate that was released by the Chapter 7 Trustee under the Settlement Agreement and the Compromise Order.

---

[19] Doc. No. 369.

[20] Doc. No. 372, ¶¶ 5-7.

**A.      The Internal Revenue Code authorizes the IRS to pursue an unsecured alter ego claim against Debtor.**

Debtor contends that the Internal Revenue Code only authorizes the IRS to pursue a non-taxpayer to the extent that the non-taxpayer holds property belonging to the taxpayer; in other words, the IRS is limited to an *in rem* remedy and may not assert a claim for money damages against a non-taxpayer.

Under Internal Revenue Code § 6321, if any person fails to pay a tax after demand is made, there "shall be a lien in favor of the United States upon all property and rights to property . . . belonging to such person."[21] The IRS perfects a tax lien by recording a Notice of Federal Tax Lien.[22] After a Notice of Federal Tax Lien is filed, the Internal Revenue Code authorizes the IRS to levy on a taxpayer's property, any of the taxpayer's rights to property, or any property on which the IRS holds a lien.[23]

But the Internal Revenue Code also confers on the IRS broad powers to collect taxes, including the authority to file civil actions. For example, if the IRS believes that a third-party, non-taxpayer is in possession of property belonging to the taxpayer, the

---

[21] I.R.C. § 6321.

[22] *Console v. Comm'r of Internal Revenue*, 291 F. App'x 234, 238 (11th Cir. 2008) ("A federal tax lien generally arises when the amount of an unpaid tax is assessed, but a tax lien is not perfected against most third parties until notice is filed.") (citation omitted).

[23] I.R.C. § 6331(a) ("If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax.").

IRS may file a Notice of Federal Tax Lien against the third party, with the lien applying not only to the taxpayer's assets in the hands of the non-taxpayer, but also to the non-taxpayer's assets.[24] Thus, in *United States v. Bogart*, the Third Circuit recognized the IRS's right to pursue all assets held by a non-taxpayer alter ego, saying, "[u]nder an alter ego theory . . . the Government may seize all of the assets of an alter ego corporation if the separate entity is merely a sham."[25]

Internal Revenue Code § 6502 specifically provides that "[w]here the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy *or by a proceeding in court*."[26] Section 7401 expressly provides that the IRS may authorize the filing of a judicial proceeding.[27] And § 7402 confers on federal district courts jurisdiction to issue such "orders and processes, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws."[28]

---

[24] *Karcho-Polselli v. U.S.*, 2009 WL 3200045, at *2 (E.D. Mich. Sept. 29, 2009).

[25] 715 F. App'x 161, 166 n. 4 (3d Cir. 2017) (citing *Oxford Capital Corp. v. U.S.*, 211 F.3d 280, 284 (5th Cir. 2000)).

[26] I.R.C. § 6502(a) (emphasis added). But the proceeding must be filed within ten years of the assessment of the tax or within other applicable limitations periods. *Id.*

[27] I.R.C. § 7401 ("No civil action for the collection or recovery of taxes, or of any fine, penalty, or forfeiture, shall be commenced unless the Secretary authorizes or sanctions the proceedings and the Attorney General or his delegate directs that the action be commenced.").

[28] I.R.C. § 7402(a).

Nothing in §§ 6502, 7401, or 7402 limits the IRS's authority to initiate civil actions to only civil actions against taxpayers. Thus, contrary to Debtor's contention, it appears Internal Revenue Code §§ 6502, 7401, and 7402 authorize the IRS to pursue generalized claims for money damages against third-party, non-taxpayers who are alleged to be the nominee or alter ego of the taxpayer.

But even if §§ 6502, 7401, and 7402 do not specifically authorize the filing of a civil action for money damages against a non-taxpayer, § 7402 makes clear that "[t]he remedies hereby provided are *in addition to and not exclusive of* any and all other remedies of the United States in such courts or otherwise to enforce such laws."[29] The Supreme Court recognized this explicit statutory authorization in *United States v. Rodgers*,[30] when the Court held there are "a number of distinct enforcement tools available to the United States for the collection of delinquent taxes," including the right to "simply sue for the unpaid amount, and, on getting a judgment, exercise the usual rights of a judgment creditor."[31]

Moreover, the cases that Debtor relies upon for the proposition that alter ego liability is strictly an *in rem* remedy do not stand for the proposition that the IRS is limited to pursuing an alter ego only for property of the taxpayer in the alter ego's

---

[29] *Id.* (emphasis added).

[30] 461 U.S. 677, 103 S. Ct. 2132, 76 L. Ed. 2d 236 (1983).

[31] *Id.* at 682.

9

hands.[32] For example, in *Shades Ridge Holding Co., Inc. v. U.S.*, although the Eleventh Circuit directly addressed the IRS's pursuit of property that the taxpayer had fraudulently transferred to its alter ego, it also noted that the alter ego's own property is subject to the collection of the taxpayer's tax liability.[33] The Fifth Circuit agreed with *Shades Ridge* in *Oxford Capital Corp. v. U.S.*, where it held that "[u]nder the alter ego doctrine, [ ] all the assets of an alter ego corporation may be levied upon to satisfy the tax liabilities of a delinquent taxpayer-shareholder."[34] And at least one bankruptcy court has allowed the IRS to assert an unsecured claim for tax debt owed by another. In *In re All Sorts of Services of America, Inc.*, the IRS filed an unsecured claim against the debtor, asserting that the debtor was the mere continuation of the taxpayer's business and therefore liable for the tax debt.[35] The bankruptcy court found the debtor and the taxpayer had engaged in a relay-style passing of the business "baton" and overruled the debtor's objection to the IRS's claim.[36]

The Court concludes that the IRS's assertion of an unsecured claim against Debtor as Hyde Park Café's alleged alter ego is consistent with its ability to levy on all of Debtor's assets.

---

[32] Doc. No. 372, ¶ 6.

[33] 888 F.2d 725, 727-728 (11th Cir. 1989).

[34] 211 F.3d 280, 284 (5th Cir. 2000).

[35] 631 B.R. 63, 77 (Bankr. M.D. Fla. 2021).

[36] *Id.* at 71-77.

**B.      The Trustee lacked standing to release the IRS's alter ego claim.**

The elements of alter ego liability under Florida law are (1) the alleged alter ego was "dominated and controlled" to the extent it lacked an independent existence; (2) the alter ego's corporate form was used "fraudulently or for an improper purpose;" and (3) the "fraudulent or improper" use of the alter ego's corporate form caused harm.[37]

Whether a bankruptcy trustee has standing to release an alter ego claim turns on whether the claim is "general" or "personal." As the Eleventh Circuit explained in *In re Icarus Holding, LLC*, an alter ego claim is "general" — and therefore belongs to the estate — if (1) state law allows alter ego claims; and (2) the alter ego claim is a "general claim that is common to all creditors."[38] Thus, a trustee can release an alter ego claim only if the claim is common to all creditors.[39]

As the bankruptcy court explained in *In re Xenerga*,[40] an alter ego claim is "common to all creditors" when the injury is to the debtor and therefore suffered by all creditors:

> An alter ego claim is a general one when liability extends "to all creditors of the corporation without regard to the personal dealings between such officers and such creditors."

---

[37] *W.P. Prods., Inc. v. Tramontina U.S.A., Inc.*, 2024 WL 1984727, at *2 (11th Cir. May 6, 2024); *see also Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008) (per curiam).

[38] *Baillie Lumber Co. v. Thompson (In re Icarus Holding, LLC)*, 391 F.3d 1315, 1321 (11th Cir. 2004).

[39] *In re AAA Bronze Statues & Antiques, Inc.*, 598 B.R. 27, 29 (Bankr. N.D. Fla. 2019).

[40] 449 B.R. 594 (Bankr. M.D. Fla. 2011).

> In other words, if the injury alleged in the alter ego action is an injury to the corporation and thus suffered generally by all creditors, and is not an injury inflicted directly on any one creditor, the trustee has exclusive standing to bring such an alter ego action. Conversely, a trustee may not bring an alter ego claim if the alleged injury is specific to one creditor and not to the debtor corporation and creditors generally.[41]

In *Xenerga*, creditors sued the debtor and its principals, alleging that the debtor was a sham by which its principals secured huge deposits from customers and then made off with the deposits by transferring them to another company with the ultimate goal of defrauding the debtor's customers.[42] Based on those allegations, the creditors sought to hold the principals liable for the debtor's debts for wrongfully depleting the debtor's assets. When the debtor filed for Chapter 7 bankruptcy, the Chapter 7 trustee contended that the creditors' alter ego claims actually belonged to the bankruptcy estate and, on behalf of the estate, entered into a settlement agreement with the debtor's principals.[43] The creditors objected to the proposed settlement.

The bankruptcy court noted that only the trustee has authority to "bring an alter ego claim on behalf of the general creditor body of a debtor corporation" and concluded that the principals' use of the debtor as a sham entity to wrongfully deplete the debtor's assets was a general claim that injured all the debtor's creditors.[44]

---

[41] *Id.* at 598-99 (citing *In re Icarus Holding*, 391 F.3d at 1321).

[42] *Id.* at 596-97, 599.

[43] *Id.* at 597-98.

[44] *Id.* at 600.

12

Therefore, the bankruptcy court held that only the trustee had authority to settle the alter ego claims against the debtor's principals.

The facts in this case are distinguishable from those in *Xenerga* because the alleged alter ego claims here do not seek to hold a non-debtor—Hyde Park Café—liable for Debtor's debts. Rather, the IRS seeks the exact opposite—to hold Debtor liable for the debts of Hyde Park Café.

Although the IRS may not be able to prove its alter ego claim, on the facts alleged, it is the IRS—not Debtor—that is the injured party. Therefore, under the rationale of *Icarus Holding* and *Xenerga*, the IRS's alter ego claim is not a general claim that is common to all creditors and thus the property of the bankruptcy estate, but rather a personal claim belonging to the IRS.

Therefore, the Court finds that the Trustee did not release the IRS's alleged alter ego claim as part of the Compromise Order.

## III.   CONCLUSION

Because the Internal Revenue Code authorizes the IRS to sue for unpaid taxes and exercise the usual rights of a judgment creditor, the IRS has authority to pursue its unsecured claim based on an alter ego theory. And because Hyde Park Café's alleged use of an alter ego to avoid the payment of taxes injured the IRS and not Debtor, the Trustee lacked standing to release the alter ego claim.

Accordingly, it is

**ORDERED** that Debtor's *Motion for Summary Judgment on Second Amended Objection to Claim No. 8-1* (Doc. No. 363) is **DENIED.**

Clerk's Office to serve interested parties via CM/ECF.